UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| COUNT US IN, WOMEN4CHANGE INDIANA, and JOSH MONTAGNE,<br><br>Plaintiffs,<br><br>v.<br><br>DEIGO MORALES, in his official capacity as Indiana Secretary of State, et al.,<br><br>Defendants. | Case No. 1:25-CV-00864-RLY-MKK |

**Memorandum in Support of Motion to Dismiss**

The State Defendants—Indiana Secretary of State Diego Morales; members of the Indiana Election Commission Beth Boyce,[1] Suzannah Wilson Overholt, Karen Celestino-Horseman, and Litany A. Pyle; Indiana Election Division Co-Directors J. Bradley King and Angela M. Nussmeyer—move to dismiss this case because there is no constitutional right to use a student identification card to identify yourself to vote and there is a rational basis for Indiana's law that no longer lets students at Indiana public universities or colleges use their students identification cards to vote. The plaintiffs fail to state a claim for which relief may be granted and the case should be dismissed.

---

[1] As noted in the motion to dismiss, Beth Boyce succeeded Paul Okeson as chair and member of the Indiana Election Commission. She is consequently automatically substituted for Mr. Okeson as a party under Federal Rule of Civil Procedure 25(d).

## Background

For over twenty years, Indiana has required voters to show a form of photo identification before they vote. *See Crawford v. Marion Cnty. Elec. Bd.*, 553 U.S. 181, 187 (2008) (opinion of Stevens, J.). In 2008, the U.S. Supreme Court upheld the constitutionality of Indiana's identification requirement. *See id.* at 203–04 (opinion of Stevens, J.); 204–09 (Scalia, J., concurring).

When establishing the identification requirement in 2005, Indiana law provided a corresponding definition of the types of identification voters can use to identify themselves: the document must include the name of the individual to whom the document was issued (and the name must match the voter's record), a photograph of the individual, and an expiration date that has not passed. Ind. Code § 3-5-2.1-84(a). The document must have been issued by either the State of Indiana or the United States. *Id*. The law was later amended to specify that documents issued by the United States Department of Defense, the United States Department of Veterans Affairs (or its predecessor, the Veterans Administration), a branch of the uniformed services, the Merchant Marine, the Indiana National Guard, or a Native American Indian tribe or band recognized by the United States government may also be used even if the document does not have an expiration date. Ind. Code § 3-5-2.1-84(b). College students attending a private college were never able to use their student identification cards to vote, but students at one of Indiana's state colleges and universities could use theirs. State education institutions include Ball State University, Indiana State

University, Indiana University, Ivy Tech Community College, Purdue University, University of Southern Indiana, and Vincennes University. Ind. Code § 21-7-13-32.

In the most recent Indiana legislative session, lawmakers, through Senate Bill 10 (SB 10), removed student identification cards as a permissible form of identification. That is, students at one of the state education institutions may use any of the other forms of identification if they want to vote, but they no longer may use an identification card issued by one of those institutions.

In May 2025, Count Us IN, Women4Change Indiana, and Josh Montagne filed a lawsuit challenging SB 10. Count Us IN asserts it is a non-profit corporation based in Fort Wayne, Indiana that carries out election-related activities and that its "student constituents" would be harmed by SB 10. Dkt. 1 at 4-5. Women4Change Indiana asserts it is a non-profit corporation based in Indianapolis, Indiana, and carries out a range of activities related to its mission. It also asserts that, "on information and belief," some of its members do not possess a valid form of identification for purposes of voting. Dkt. 1 at 7. Josh Montagne asserts he is a 20-year-old sophomore at Indiana University Bloomington and asserts he does not have an Indiana drivers license and that it would be "burdensome" to get an Indiana driver's license or another form of valid identification. Dkt. 1 at 8.

In their lawsuit, the plaintiffs assert that SB 10, by removing identification cards issued by state educational institutions as a valid form of identification to vote, places an undue burden on the right to vote and thus violates the First and

Fourteenth amendments. Dkt. 25-26. They further assert that SB 10 denies the right to vote on account of age in violation of the Twenty-Sixth amendment. Dkt. 1 at 26-28.

**Standard of review**

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018). But courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002). The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of a complaint, not the factual sufficiency. *Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 675- 76 (7th Cir. 2001). The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). The complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

**Argument**

**A. Indiana's consistent student ID law does not put an undue burden on the right to vote under the First and Fourteenth Amendments of the United States Constitution.**

Plaintiffs assert that the student identification law imposes a substantial and unjustified burden on young voters in Indiana, and thus the First Amendment and the Equal Protection Clause of the Fourteenth Amendment compel this Court to strike down Indiana's law. Dkt. 1 at 26.

At bottom, the plaintiffs are asserting that it is unconstitutional to require someone to present government-issued identification to vote, in essence asking this Court to revisit the Supreme Court's decision in *Crawford v. Marion Cnty. Elec. Bd.*, 553 U.S. 181. And that is not something this Court can do. Consequently, as a matter of well-established law, the State is not burdening the right to vote by refusing to give special treatment to students at public universities or colleges. Other courts looking at whether a restriction of the use of a student identification card violates the Constitution have rejected those challenges to similar state laws. The Court here should do likewise.

With their First and Fourteenth Amendment challenge, the plaintiffs must show: the state action impinges upon the exercise of a fundamental right without a compelling government interest, the state action discriminates on the basis of a suspect classification without being narrowly tailored to serve a compelling government

interest, or the state action discriminates against a non-protected class without any conceivable rational basis. *Nashville Student Org. Comm. V. Hargett*, 155 F. Supp. 3d 749, 753–54 (M.D. Tenn. 2015)(citing *Romer v. Evans*, 517 U.S. 620, 631, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996); *Plyler v. Doe*, 457 U.S. 202, 216–17, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982); *San Antonio Indep. Sch. Dist. V. Rodriguez*, 411 U.S. 1, 17, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973)).

Plaintiffs in their complaint suggest that the State must justify SB 10 with a legitimate state interest narrowly tailored to serve any compelling state interests (Dkt. 1 at 26), but that assertion is unsupported by law.

As in the context of absentee voting restrictions, strict scrutiny is "not necessary" here because the law does not have an impact on the plaintiffs' ability to exercise the fundamental right to vote. *McDonald v. Board of Election Commissioners of Chicago*, 394 U.S. 802 (1969). To trigger the fundamental right requirement, the plaintiffs would need to allege that they would be absolutely prohibited from voting in the State. *Id.* at 808 n.7. Thus, the State must only show some rational relationship to a legitimate state end. *Id.* at 807.

And there is a manifestly rational relationship between limiting the forms of identification available.

First, there is the problem of fraud. While the plaintiffs spurn the idea that a concern about fraud may serve as a rational basis for the law, the Supreme Court already looked at Indiana's identification requirements and stated that "[t]here is no question about the legitimacy or importance of a State's interest in counting only

eligible voters' votes," and that "Indiana's interest in protecting public confidence in elections, while closely related to its interest in preventing voter fraud, has independent significance, because such confidence encourages citizen participation in the democratic process." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181 (2008).

Next is the concern about the variety of student identification cards, such as digital cards, something that the plaintiffs themselves note. Dkt. 1 at 24. Plaintiffs suggest that any concern can be solved by just letting all private school students use their diverse identification cards (which does not address the concern at all and would involve a wholesale change of the law that permits only government-issued cards) or possibly by mandating the type of cards schools must issue to their students. *Id.* But that is precisely the kind of scrutiny that is not called for given the plaintiffs' claims. Indeed, as the Seventh Circuit recently explained when addressing a challenge to Indiana's restrictions on absentee voting, "[u]nder rational-basis review, a law must bear some rational relationship to a legitimate state end, and this poses a low hurdle because rational-basis review is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Tully v. Okeson*, 977 F.3d 608, 616 (7th Cir. 2020) (cleaned up) (quoting *Johnson v. Daley*, 339 F.3d 582, 587 (7th Cir. 2003)). Accordingly, because there is a rational basis for SB 10, the plaintiffs' complaint should be dismissed.

But even if the Court were to undertake the "*Anderson-Burdick*" analysis, Plaintiffs' complaint still should be dismissed. As the Seventh Circuit recently explained, the *Anderson-Burdick* test is deferential to state legislative judgments: It

does not "allow the judiciary to decide whether any given election law is necessary" on the ground that unnecessary laws are "by definition an excessive burden." *Luft v. Evers*, 963 F.3d 665 (7th Cir. 2020). On the contrary, the Supreme Court's decisions "foreclose[ ] that sort of substitution of judicial judgment for legislative judgment." *Id.*

In addition, courts applying this test "must not evaluate each clause [of a State's election law] in isolation." *Id.* Instead, "[c]ourts weigh these burdens against the state's interests by looking at the whole electoral system. Only when voting rights have been severely restricted must states have compelling interests and narrowly tailored rules." *Id.* (internal citations omitted).

Plaintiffs fail to look at Indiana's system as a whole, instead focus on only the student identification restriction, inviting the Court to second guess decisions by the Indiana lawmakers. But *Anderson-Burdick* does not license such second-guessing. "In isolation, any rule reducing" the number of opportunities to vote "seems like an unjustified burden. But electoral provisions cannot be assessed in isolation. . . . One less-convenient feature does not an unconstitutional system make." *Id.* Because Plaintiffs have only identified a single, "less-convenient feature" of Indiana's voting system, their *Anderson-Burdick* theory fails.

And even if the Court were to consider whether Indiana's voting requirements as a whole "severely restrict[s]" voting rights under *Anderson-Burdick*, *id.*, it plainly does not. Indiana permits many forms of identification, but it has never allowed all

college students to use their school identification cards to identify themselves when they vote; now Indiana's system is just more consistent.

And it is not just consistent with those at private colleges or universities—students at public schools still have options to use all the other forms of identification that other Hoosiers—non-students, veterans, the elderly, new residents—have been able to obtain for the twenty years since Indiana added the identification requirement.

## B. Indiana's consistent student ID rule does not deny or abridge anyone's right to vote on account of age and thus comports with the Twenty-Sixth Amendment.

Indiana's decision to make consistent its student identification requirements does not affect a younger voter's ability to cast a ballot and does not run afoul of the Twenty-Sixth Amendment.

The Twenty-Sixth Amendment provides that "[t]he right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age." U.S. Const. amend. XXVI.

Plaintiffs claim that SB 10 violates the Twenty-Sixth Amendment's prohibition against the denial or abridgement of the right to vote on account of age because it no longer grants a unique status for holders of student IDs issued by public schools. While the Constitution provides the right to vote, it does not confer the right to use any identification a student might have on hand. That is, just because someone has a certain kind of identification, it does not mean that a restriction on that kind of

identification is an abridgement of the right to vote, much less a bar on the right to vote.

While the plaintiffs invite the Court to import Fifteenth Amendment jurisprudence to its analysis of their Twenty-Sixth Amendment claim, the Seventh Circuit rejected such an approach, undertaking a straightforward look at whether the challenged law abridges the right to vote. *Tully v. Okeson*, 78 F.4th 377, 385–86 (7th Cir. 2023). And any such "'Abridgement' must involve the imposition of a 'material requirement.'" *Id.* Further, whether the statute makes the plaintiffs "worse off is *not* the equivalent of asking whether their right to vote has been abridged." *Id.* (cleaned up, emphasis in original).

In *Tully v. Okeson II*, the Seventh Circuit held that Indiana's accommodation for the elderly to vote absentee imposes no requirements on the exercise of the voting franchise, and thus does not run afoul of the Twenty-Sixth Amendment. *Id.* at 377. And one court, looking at a statute in Idaho similar to Indiana's SB 10, looked to *Tully II* and held that the Idaho law likewise does not violate the Twenty-Sixth Amendment because it "imposes no 'material requirement' on younger voters solely on account of age." *Mar. for Our Lives Idaho v. McGrane*, 749 F. Supp. 3d 1128, 1141 (D. Idaho 2024). And while in Idaho (as would be the case in Indiana) "it may be easier for students to register to vote or to vote using their student identification card, 'it does not automatically follow' that not allowing them to use these cards imposes a 'material requirement' on their right to vote on account of their age." *Id.* at 1141-42 (citing *Nashville Student Org. Comm.*, 155 F. Supp. 3d 749).

Similarly, a district court in Tennessee looked to a similar law and, relying on *Crawford v. Marion Cnty. Election Bd.*, held that the burden of obtaining a photo identification card "does not impinge on the right to vote in a way that warrants even a heightened level of scrutiny," and consequently Tennessee's ID law was not an abridgment of the right to vote for purposes of a Twenty-Sixth Amendment Claim. *Nashville Student Org. Comm. V. Hargett*, 155 F. Supp. 3d 749, 757 (M.D. Tenn. 2015). All Tennessee's law was doing—and thus all Indiana's law does—is not allow students to use the student identification cards they already have. And while that may make it easier for them to vote, that does not work as an abridgment of the right to vote. *Id.* at 758.

This analytical approach comports with the history of the Twenty-Sixth Amendment. The amendment was widely understood at the time of its adoption to be fundamentally concerned with lowering the voting age from 21—set by the Fourteenth Amendment, see U.S. Const., amend. IV, § 2—to 18. It served the dual purpose of "eliminating the 'administrative nightmare' of separate voter lists for national and local elections and bringing 18, 19 and 20-year-old persons into the political process." *Walgren v. Bd. Of Selectmen of Town of Amherst*, Mass., 373 F. Supp. 624, 633 (D. Mass. 1974) (quoting *Walgren v. Howes*, 482 F.2d 95, 100-101 (1st Cir. 1973)). The Amendment was "less a recognition of basic human rights" than "a change in the condition of young Americans" who were not only being called to fight in Vietnam, but were also "generally were marrying earlier, travelling more widely and taking a greater interest in government than ever before." *Id.* at 634.

Despite this history, the plaintiffs posit that SB 10 is some kind of attack on the young and enacted to discriminate on the basis of age. But the Supreme Court has clearly directed district courts to presume legislative good faith and to "draw the inference that cuts in the legislature's favor when confronted with evidence that could plausibly support multiple conclusions." *Alexander v. S.C. State Conf. of the NAACP*, 602 U.S. 1, 10 (2024) (citing*, Abbott v. Perez*, 585 U.S. 579, 610–612 (2018)). There is nothing to suggest SB 10 is about age. The plaintiffs are using "young people" or "younger Hoosiers" as shorthand for the subset of young people who happen to attend a state college or university. Dkt. 1 at 13. And there is no rationale for this subset to receive better treatment than the hundreds of thousands of other young Hoosiers who either attend a private college or don't attend college at all.

And this is why the supposed "burden" that this relatively small subset face does not hold water. The "burdens" are essentially a rehash of those asserted by the plaintiffs in *Crawford*, assertions that the Supreme Court rejected in upholding Indiana's photo ID requirement in 2008. 553 U.S. at 198 (noting the asserted inconvenience of making a trip to the BMV and gathering required documents). The plaintiffs here have demonstrated no need to revisit any of these assertions to provide a subset of the population special treatment.

\* \* \*

It is not a deprivation of any right to vote or even an abridgment for students at a public college or university to use one of the standard forms of identification to vote that other Hoosiers are perfectly capable to obtaining every day across the state. Plaintiffs plead what is at most an inconvenience and nothing that rises to the level of a constitutional violation. Accordingly, their complaint should be dismissed.

Respectfully submitted,

THEODORE E. ROKITA
INDIANA ATTORNEY GENERAL
Attorney No. 18857-49

Date: July 7, 2025

By: */s/ Jefferson S. Garn*
Jefferson S. Garn
Deputy Attorney General
Attorney No. 29921-49
OFFICE OF ATTORNEY GENERAL TODD ROKITA
Indiana Government Center South, 5th Floor
302 West Washington Street
Indianapolis, IN 46204-2770
Phone: (317) 232-5933
Fax: (317) 232-7979
Email: Jefferson.Garn@atg.in.gov