## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

COUNT US IN, WOMEN4 CHANGE
INDIANA, and JOSH MONTAGNE,

          Plaintiffs.

      v.

DIEGO MORALES, in his official capacity as
Indiana Secretary of State, et al.,

          Defendants.

Case No. 1:25-cv-00864-RLY-MKK

---

**BRIEF OF REPUBLICAN NATIONAL COMMITTEE AS *AMICUS CURIAE* IN SUPPORT OF THE STATE DEFENDANTS' MOTION TO DISMISS**

Lee E. Goodman*
D.C. Bar No. 435493
Domenic P. Aulisi*
Virginia Bar No. 101045
DHILLON LAW GROUP INC.
2121 Eisenhower Avenue, Suite 608
Alexandria, Virginia 22314
(415) 433-1700
lgoodman@dhillonlaw.com
daulisi@dhillonlaw.com

     * *Pro Hac Vice* pending

Counsel for *Amicus Curiae*
The Republican National Committee

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

INTEREST OF *AMICUS CURIAE* ............................................................................ 1

INTRODUCTION AND SUMMARY OF THE ARGUMENT ................................. 2

ARGUMENT ................................................................................................................ 3

I.    If this Court Evaluates SB 10 Under the *Anderson-Burdick* Test, SB 10 Is a
Constitutionally Valid Exercise of the State of Indiana's Authority to Regulate Its
Elections. ............................................................................................................. 5

    A.    Indiana May Permissibly Require Acceptable Documentary Proof When
Voting. ................................................................................................ 5

    B.    Plaintiffs Have Failed to Demonstrate that SB 10 Severely Burdens the Right to
Vote. .................................................................................................... 7

    C.    SB 10 Is a Reasonable Means of Advancing the State of Indiana's Interest in
Maintaining the Integrity of Its Elections. ...................................... 10

II.   The Exclusion of Student IDs Does Not Discriminate Against Young Voters. ............ 13

CONCLUSION .......................................................................................................... 16

CERTIFICATE OF COMPLIANCE ......................................................................... 18

CERTIFICATE OF SERVICE .................................................................................. 19

# TABLE OF AUTHORITIES

**Cases**                                                                                        **Page(s)**

*Anderson v. Celebrezze*,
    460 U.S. 780 (1983) ............................................................................. 4, 5, 7

*Arizona v. Inter Tribal Council of Ariz.*,
    570 U.S. 1 (2013) ..................................................................................... 5

*BABE VOTE v. McGrane*,
    546 P.3d 694 (Idaho 2024) ....................................................................... 12

*Brnovich v. Democratic Nat'l Comm.*,
    594 U.S. 647 (2021) ......................................................................... 6, 7, 8, 12

*Burdick v. Takushi*,
    504 U.S. 428 (1992) ................................................................................. 4, 6

*Clingman v. Beaver*,
    544 U.S. 581 (2005) ................................................................................... 6

*Crawford v. Marion Cnty. Election Bd.*,
    553 U.S. 181 (2008) .......................................................................... *passim*

*Denius v. Dunlap*,
    330 F.3d 919 (7th Cir. 2003) ...................................................................... 14

*Harper v. Virginia Bd. of Elections*,
    383 U.S. 663 (1966) ................................................................................... 5

*Indiana Green Party v. Morales*,
    113 F.4th 739 (7th Cir. 2024) ................................................................. 6, 10

*Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.*,
    298 F.3d 600 (7th Cir. 2002) ...................................................................... 14

*March for Our Lives Idaho v. McGrane*,
    749 F. Supp. 3d 1128 (D. Idaho 2024) ...................................................... 12

*McDonald v. Bd. of Election Comm'rs of Chicago*,
    394 U.S. 802 (1969) ............................................................................. 4, 16

*Munro v. Socialist Workers Party*,
    479 U.S. 189 (1986) ................................................................................... 7

*Nashville Student Org. Comm. v. Hargett*,
    155 F. Supp. 3d 749 (M.D. Tenn. 2015) .......................................... 12, 13, 16

*Ne. Ohio Coal. for the Homeless v. LaRose*,
  767 F. Supp. 3d 585 (N.D. Ohio 2024) ................................................. 12

*Norman v. Reed*,
  502 U.S. 279 (1992) ............................................................................... 6

*Purcell v. Gonzalez*,
  549 U.S. 1 (2006) ................................................................................... 6

*REM Props. v. ExxonMobil Oil Corp.*,
  No. 22 C 5108, 2023 WL 5152665 (N.D. Ill. Aug. 10, 2023) ............... 14

*San Antonio Indep. Sch. Dist. v. Rodriguez*,
  411 U.S. 1 (1973) ................................................................................. 16

*Storer v. Brown*,
  415 U.S. 724 (1974) ............................................................................... 5

*Timmons v. Twin Cities Area New Party*,
  520 U.S. 351 (1997) ............................................................................ 6, 7

*Tully v. Okeson*,
  78 F.4th 377 (7th Cir. 2023) ............................................................ 14, 16

*Veasey v. Abbott*,
  888 F.3d 792 (5th Cir. 2018) ............................................................... 12

*Washington State Grange v. Washington State Republican Party*,
  552 U.S. 442 (2008) ............................................................................ 4, 5

**Statutes**

Idaho Code § 34-1113 (2024) ................................................................. 11

Idaho Code § 34-411 (2024) ................................................................... 11

Ind. Code § 3-11.7-5-2.5 .......................................................................... 9

Ind. Code § 3-11.7-5-2.5 (2024) .............................................................. 9

Ind. Code § 3-5-2-40.5 ............................................................................. 8

Ind. Code § 9-24-16-1 .............................................................................. 8

Ind. Code § 9-24-16-10(b) ....................................................................... 8

Ind. Code § 9-24-16-3.5 ........................................................................... 8

Ind. Code § 9-24-3-2.5 ........................................................................... 15

Mo. Rev. Stat. § 115.427 (2022) ................................................................................. 11

Ohio Rev. Code Ann. § 3501.01 (West 2023) ............................................................ 11

Ohio Rev. Code Ann. § 3505.18 (West 2023) ............................................................ 11

S.C. Code Ann. § 7-13-710 (2024) ............................................................................. 11

Tenn. Code Ann. § 2-7-112 (West 2024) .................................................................... 11

Tex. Elec. Code Ann. § 63.0101 (West 2024) ............................................................ 11

**Other Authorities**

David A. Lieb, *Missouri enacts photo voter ID law before November elections*, AP News (June 29, 2022, at 2:45 PM PT), https://apnews.com/article/2022-midterm-elections-voting-missouri-government-and-politics-342663e72a921cb9a5f55657d87a0910 ............................ 12

Idaho Att'y Gen., *Voter ID Law Upheld in Unanimous Idaho Supreme Court Decision* (Aug. 29, 2024), https://www.ag.idaho.gov/newsroom/voter-id-law-upheld-in-unanimous-idaho-supreme-court-decision ............................................................................................ 12

Ind. Bureau of Motor Vehicles, *Indiana Driver's License and ID Card Security and Authenticity*, https://www.in.gov/bmv/resources/files/DL_Security_and_Authenticity_flyer.pdf (last visited July 10, 2025) .......................................................... 11

Ind. Comm'n for Higher Educ., *Data Dashboards and Analysis: Enrollment & Degree Information, Fall Census Enrollment Summary (October 2024)*, https://www.in.gov/che/reports-and-analyses/#Enrollment___Degree_Information (last visited July 14, 2023) ............................................................................................................ 15

Ind. Sec'y of State, *Voter Registration and Turnout Statistics: 2024 General Election Registration and Turnout Data*, https://www.in.gov/sos/elections/voter-information/register-to-vote/voter-registration-and-turnout-statistics/, (last visited July 14, 2025) ........................... 8

Ind. Sec'y of State, *Indiana Secretary of State Diego Morales Applauds Passage of HB 1680 and SB 10 to Strengthen Election Integrity* (May 7, 2025), https://events.in.gov/event/indiana-secretary-of-state-diego-morales-applauds-passage-of-hb-1680-and-sb-10-to-strengthen-election-integrity. ........................................................................................... 10, 11

Ind. Sec'y of State, *Voter Information: Photo ID Law: Obtaining a Photo ID*, https://www.in.gov/sos/elections/voter-information/photo-id-law/obtaining-a-photo-id/ (last visited July 9, 2025) ............................................................................................. 8, 9

Ind. Sec'y of State, *Voter Information: Ways to Vote: Provisional Ballots*, https://www.in.gov/sos/elections/voter-information/ways-to-vote/provisional-ballots/ (last visited July 2, 2025) ................................................................................................... 9

Ind. Univ., *Enrollment Trends: Attribute Selection – Ethnicity*,
   https://tableau.bi.iu.edu/t/prd/views/iuia_est_census_enrollment_public/Enrollment
   Trends?%3Aembed=y&%3Aiid=1&%3AisGuestRedirectFromVizportal=y (last visited July
   10, 2025).................................................................................................................... 15

STATS Indiana, *InDepth Profile*, https://www.stats.indiana.edu/profiles/profiles.asp (last visited
   July 9, 2025).................................................................................................................. 14

Tableau Pub., *Public Enrollment and Degree Facts*,
   https://public.tableau.com/app/profile/che.staff/viz/FB_11/Story1 (last visited July 14, 2025)15

U.S. Bureau of Transp. Stats., *Licensed Drivers*, https://www.bts.gov/content/licensed-drivers
   (last visited July 9, 2025) ............................................................................................... 9

**Rules**

Fed. R. Evid. 201(b).......................................................................................................... 14

**Constitutional Provisions**

U.S. Const. art. I, § 4........................................................................................................ 5

## INTEREST OF *AMICUS CURIAE*[1]

The Republican National Committee (the "RNC") is the national political party committee that represents and manages the interests of the Republican Party of the United States at the national level while also representing the interests of Republican candidates and voters across the country at all levels of government. It participates in voter registration and turnout programs and supports the election of Republican candidates for state and federal office. The RNC supports voter registration and get-out-the-vote programs on college campuses, both directly and through college Republican organizations. The RNC also litigates election integrity matters. It does so because the RNC has clear interests in protecting the ability of Republican voters to cast, and Republican candidates to receive, effective votes, and to vote with confidence in the electoral process. The RNC also intervenes in such litigation to ensure that states are able to pass laws and implement regulations that secure voter rolls and populate them only with eligible voters.

Accordingly, the RNC submits this brief in support of Defendants representing the State of Indiana. Plaintiffs' suit, if successful, would unjustifiably limit the right of the State to protect the integrity of its elections and confidence in the system. Therefore, the RNC has a serious interest in this case.

---

[1] No counsel for any party authored this brief in whole or in part, and no entity or person, aside from *amicus curiae*, their members, or their counsel, made any monetary contribution intended to fund the preparation or submission of this brief. The State Defendants have consented to the filing of this brief. Plaintiffs and Defendant Monroe County Board of Elections take no position on the filing of this brief.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Senate Bill 10 ("SB 10") reflects Indiana's considered judgment about how best to safeguard its elections. In a climate of growing public concern over election integrity, states must draw reasonable and neutral rules about the forms of identification that reliably verify voter identity. SB 10 does just that, removing one form of identification, student IDs, from an otherwise secure framework of acceptable identification. Far from being a novel or extreme approach to this issue, this legislative choice mirrors those of several other states, which have been consistently upheld by courts across the country.

Plaintiffs paint SB 10 as a sweeping infringement on fundamental constitutional rights and a targeted assault on the rights of young voters. That framing fails as a matter of law and judicially noticeable fact.

The State Defendants assert that SB 10 is a rational measure aimed at safeguarding election integrity and ensuring uniform security standards. This view is entirely consistent with the well-established rule that states may permissibly require voters to prove their identity when voting. The State Defendants offer two doctrinal approaches for the court to analyze the student ID provision of SB 10. The first is rational basis scrutiny. The second is the "*Anderson-Burdick*" analysis. The law is constitutionally valid under both analyses. Under the *Anderson-Burdick* analysis, the law is constitutionally sound because it presents only minimal burdens with which millions of Indiana voters routinely comply, such as obtaining standard government-issued identification, while advancing the State of Indiana's legitimate interest in safeguarding the integrity of its elections. SB 10 merely requires Indiana residents who attend public colleges to do what the U.S. Supreme Court, in *Crawford v. Marion County Election Board*, 553 U.S. 181 (2008) (pl. op.), already has approved for millions of other Indiana voters.

Furthermore, Plaintiffs' assertions of age-based discrimination are unpersuasive. SB 10 applies equally to everyone regardless of their age. It sets a uniform standard for all Indiana voters, each of whom is permitted to choose from the same list of acceptable identifications to vote. Publicly reported statistical evidence further reveals that SB 10's exclusion of student IDs does not specifically target voters based on their age for several reasons. First, a significant percentage of college-aged Indiana residents do not attend Indiana public colleges and are, therefore, unaffected by SB 10. Second, a substantial portion of Indiana public college students matriculate from Indiana high schools, and they have had many years to obtain a permissible identification to vote. Such Indiana residents are likewise unaffected by SB 10. Third, many students enrolled in colleges (both undergraduate and graduate) who may be affected by SB 10 are not "young" but rather are older students. Therefore, any claim that SB 10 discriminates against these voters on the basis of their *age* would be a novel proposition that finds no support in established law.

In sum, Indiana's exclusion of student IDs from its category of acceptable proof of identification does not discriminate against young voters, and SB 10's promotion of election integrity is constitutionally permissible. At bottom, SB 10 represents a legitimate, neutral regulation that balances the state's interest in maintaining secure and trustworthy elections with the reasonable expectation placed upon all Indiana voters to comply with standard identification requirements. Therefore, this Court should reject Plaintiffs' attempt to portray Indiana's neutral and well-justified rule as a violation of constitutional rights and grant the State Defendants' Motion to Dismiss.

## ARGUMENT

As the State Defendants argue, a plaintiff bringing a First and Fourteenth Amendment challenge must generally demonstrate that the challenged law (1) "impinges upon the exercise of a fundamental right without a compelling government interest," (2) "discriminates on the basis of

3

a suspect classification without being narrowly tailored to serve a compelling government interest," or (3) "discriminates against a non-protected class without any conceivable rational basis." Dkt. 31 at 5–6 (citing cases). Plaintiffs argue that the State of Indiana must proffer a compelling justification for SB 10's exclusion of student ID from the list of acceptable proof of identification. Dkt. 1 ¶ 85. But Plaintiffs' view fails to contend with the standard articulated in *McDonald v. Board of Election Commissioners of Chicago*, 394 U.S. 802 (1969). There, the U.S. Supreme Court stated that election regulations which do not impact a plaintiff's ability to exercise his or her fundamental right to vote are not subject to strict scrutiny. Rather, such regulations must merely "bear some rational relationship to a legitimate state end." *Id.* at 809. Under this framework, and in light of the U.S. Supreme Court's later holding in *Crawford*, SB 10 plainly falls within the State of Indiana's broad power to regulate the conduct of its elections. *See Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 451 (2008) ("The States possess a broad power to prescribe the Times, Places and Manner of holding Elections for Senators and Representatives . . . which power is matched by state control over the election process for state offices." (internal quotation marks and citations omitted)).

Additionally, the State Defendants argue that Indiana's law excluding the use of student IDs to prove one's identity when voting is permissible under the *Anderson-Burdick* framework. Dkt. 31 at 7–9. In evaluating constitutional challenges to election law under *Anderson-Burdick*, courts "weigh the asserted injury to the right to vote against the 'precise interests put forward by the State as justifications for the burden imposed by its rule.'" *Crawford*, 553 U.S. at 190 (quoting *Burdick v. Takushi*, 504 U.S. 428, 434 (1992)); *see also Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). If the Court elects to undertake an *Anderson-Burdick* analysis, SB 10 is a legitimate exercise of the State of Indiana's regulatory authority.

I.      **If this Court Evaluates SB 10 Under the *Anderson-Burdick* Test, SB 10 Is a Constitutionally Valid Exercise of the State of Indiana's Authority to Regulate Its Elections.**

A.      **Indiana May Permissibly Require Acceptable Documentary Proof When Voting.**

The U.S. Constitution grants states the power to regulate the "Times, Places and Manner" of elections. U.S. Const. art. I, § 4. The scope of this authority is broad, allowing states to develop comprehensive election codes that regulate the voting process. *See Washington State Grange*, 552 U.S. at 451. States may impose requirements that are "germane to one's ability to participate intelligently in the electoral process." *See Harper v. Virginia Bd. of Elections*, 383 U.S. 663, 668 (1966). Moreover, "the power to establish voting requirements is of little value without the power to enforce those requirements." *Arizona v. Inter Tribal Council of Ariz.*, 570 U.S. 1, 17 (2013).

"'[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes.'" *Anderson*, 460 U.S. at 788 (quoting *Storer v. Brown,* 415 U.S. 724, 730 (1974)). "To achieve these necessary objectives, States have enacted comprehensive and sometimes complex election codes," and "[e]ach provision of these schemes," including those that "govern[] the registration and qualifications of voters," "inevitably affects—at least to some degree—the individual's right to vote and his right to associate with others for political ends." *Id.* A state's "important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions," and "evenhanded restrictions that protect the integrity and reliability of the electoral process itself" do not constitute "invidious discrimination" in violation of the Fourteenth Amendment. *Id.* at 788, n.9.

An analysis conducted under the *Anderson-Burdick* framework requires the court to consider "the specific facts of the case to determine the extent of the burdens imposed and the

weight of the State's asserted interests," and "each avenue to ballot access . . . in its entirety" when "weighing the burdens against the State's interests." *Indiana Green Party v. Morales*, 113 F.4th 739, 746 (7th Cir. 2024) (citations omitted). Regulations that impose "severe" burdens on the right to vote "must be narrowly tailored and advance a compelling state interest." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997); *accord Burdick*, 504 U.S. at 434 (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)). "Lesser burdens, however, trigger less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable nondiscriminatory restrictions." *Timmons*, 520 U.S. at 358 (internal quotations and citation omitted); *accord Clingman v. Beaver*, 544 U.S. 581, 586–87 (2005).

Applying these principles, nearly two decades ago, the U.S. Supreme Court affirmed the State of Indiana's "valid interest in protecting the integrity and reliability of the electoral process," and recognized that it may promote that interest by requiring identification at the polls, despite the "inconvenience" that such a documentary requirement may cause some voters. *Crawford*, 553 U.S. at 198, 204 (internal quotation marks and citation omitted). Thirteen years later, the Court went a step further, acknowledging that even if a restriction results in a disparate burden on some voters, "'[a] State indisputably has a compelling interest in preserving the integrity of its election process,'" and that interest warrants the imposition of election regulations designed to achieve that end. *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 685 (2021) (citing *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006)).

Moreover, a state may advance this interest by imposing reasonable restrictions even if it has yet to experience significant voter fraud. *Id.* at 686 ("[I]t should go without saying that a State may take action to prevent election fraud without waiting for it to occur and be detected within its own borders."). Indeed, requiring a state to wait to improve the security of its elections until it can

demonstrate serious, ongoing voter fraud would "necessitate that a State's political system sustain some level of damage before the legislature could take corrective action," thereby interfering with the Court's view that state legislatures "should be permitted to respond to potential deficiencies in the electoral process with foresight rather than reactively[.]" *Munro v. Socialist Workers Party*, 479 U.S. 189, 195 (1986).

Because a voter identification requirement does not severely burden a plaintiff's fundamental right to vote, the State of Indiana's "valid interest in protecting the integrity and reliability of the electoral process," *Crawford*, 553 U.S. at 204, is sufficient to warrant "reasonable, nondiscriminatory restrictions" on the right to vote, *Anderson*, 460 U.S. at 788; *accord Timmons*, 520 U.S. at 358, even if the State does not demonstrate an ongoing issue with significant voter fraud, *Brnovich*, 594 U.S. at 686.

### B. Plaintiffs Have Failed to Demonstrate that SB 10 Severely Burdens the Right to Vote.

Plaintiffs allege that "the Student ID Ban imposes substantial, unjustified burdens on the right to vote for young voters" by "requir[ing] them to obtain alternative documentation that students are less likely to have and that is especially difficult for students to get because many lack the access to required records or necessary transportation, for example." Dkt. 1 ¶ 84. This lynchpin allegation was directly rejected by the U.S. Supreme Court in *Brnovich*:

> Voting takes time and, for almost everyone, some travel, even if only to a nearby mailbox. Casting a vote, whether by following the directions for using a voting machine or completing a paper ballot, requires compliance with certain rules. But because voting necessarily requires some effort and compliance with some rules, the concept of a voting system that is "equally open" and that furnishes an equal "opportunity" to cast a ballot must tolerate the "usual burdens of voting."

594 U.S. at 669 (quoting *Crawford*, 553 U.S. at 198). Applying the same requirements that millions

of Indiana voters[2] comply with is hardly a severe burden. It simply applies the "usual burdens of voting" that apply to all Indiana residents, including those twenty-year-olds who do not attend college or attend private colleges, to Indiana residents who happen to attend public colleges. *See id.*

To vote in Indiana, an Indiana resident must obtain and present a form of identification that meets certain requirements. Specifically, the identification must (1) show the name of the individual to whom the document was issued, provided that the name conforms to the name in the individual's voter registration record; (2) show a photograph of the individual to whom the document was issued; and (3) include an expiration date later than the date of the election. Ind. Code § 3-5-2-40.5. If an Indiana resident does not have a form of identification that meets these requirements, such as a driver's license, the Bureau of Motor Vehicles (BMV) is required to provide a free ID card. Ind. Code § 9-24-16-10(b). To obtain an ID card, the applicant must present "documentary evidence to the bureau of the individual's lawful status in the United States," which includes (1) valid documentary evidence that the applicant has lawful status or a pending application for adjustment of his or her status and (2) the applicants social security number or verification of the applicant's ineligibility to be issued a social security number. Ind. Code §§ 9-24-16-1, 9-24-16-3.5. After providing the necessary documentation, all permanent cards must be mailed to customers and received within ten days. Ind. Sec'y of State, *Voter Information: Photo ID Law: Obtaining a Photo ID*, https://www.in.gov/sos/elections/voter-information/photo-id-law/obtaining-a-photo-id/ (last visited July 9, 2025). Until then, customers are issued temporary

---

[2] The State of Indiana reports that 4,837,802 Indiana residents registered to vote for the 2024 General Election, with 2,976,599 of those registered voters voting on November 5. *See* Ind. Sec'y of State, *Voter Registration and Turnout Statistics: 2024 General Election Registration and Turnout Data*, https://www.in.gov/sos/elections/voter-information/register-to-vote/voter-registration-and-turnout-statistics/, (last visited July 14, 2025).

ID cards, which are sufficient for voter identification purposes. *Id.*

Not all Indiana residents have a driver's license, so many will need to go through this process to vote. *See* U.S. Bureau of Transp. Stats., *Licensed Drivers*, https://www.bts.gov/content/licensed-drivers (last visited July 9, 2025). The burdens Plaintiffs' complaint mentions in securing documents for state ID purposes are therefore not unique to college students or voters in their twenties, but rather are the same requirements to which all other Indiana residents not attending a public college in the state must adhere.

In *Crawford*, the U.S. Supreme Court concluded that those same burdens were insubstantial when applied to Indiana residents at large. *See* 553 U.S. at 198. And Plaintiffs offer no justification for their general contention that these burdens should be viewed differently because they are now applied to students attending public universities. Indeed, these usual burdens are even less severe in light of the provisional ballot mechanism under Indiana law. When a voter casts a provisional ballot in accordance with Indiana Code § 3-11.7 and has his or her vote challenged after being unable to provide proof of identification, he or she may appear before the circuit court clerk or election board within ten days after the election. Ind. Code § 3-11.7-5-2.5 (2024); Ind. Sec'y of State, *Voter Information: Ways to Vote: Provisional Ballots*, https://www.in.gov/sos/elections/voter-information/ways-to-vote/provisional-ballots/ (last visited July 2, 2025). After the clerk or board determines the voter's provisional ballot is valid—and after the voter executes an affidavit that he or she is the same person who cast the provisional ballot and is indigent, unable to get proof of identification without payment of a fee, or has a religious objection to being photographed—the board may direct that the ballot be counted. Ind. Code § 3-11.7-5-2.5. The availability of this process to indigent college students means the burdens of acquiring the necessary documents for a state ID are not severe.

9

In *Crawford*, the Supreme Court found that this provisional ballot mechanism lessened the burden of Indiana's larger photo ID law:

> The severity of that burden is, of course, mitigated by the fact that, if eligible, voters without photo identification may cast provisional ballots that will ultimately be counted. To do so, however, they must travel to the circuit court clerk's office within 10 days to execute the required affidavit. It is unlikely that such a requirement would pose a constitutional problem unless it is wholly unjustified. And even assuming that the burden may not be justified as to a few voters, that conclusion is by no means sufficient to establish petitioners' right to the relief they seek in this litigation.

553 U.S. at 196.

Therefore, even "considered in [their] entirety," *Indiana Green Party*, 113 F.4th at 746, the burden college students have is the same non-severe burden upheld in *Crawford*. So, the student ID exclusion is not a severe burden as a matter of well-established precedent.

### C.    SB 10 Is a Reasonable Means of Advancing the State of Indiana's Interest in Maintaining the Integrity of Its Elections.

Eliminating the use of student ID is unquestionably a reasonable election regulation. Student identification "do[es] not meet uniform security standards." Ind. Sec'y of State, *Indiana Secretary of State Diego Morales Applauds Passage of HB 1680 and SB 10 to Strengthen Election Integrity* (May 7, 2025), https://events.in.gov/event/indiana-secretary-of-state-diego-morales-applauds-passage-of-hb-1680-and-sb-10-to-strengthen-election-integrity. Indeed, an Indiana driver's license or identification card issued by the BMV incorporates several significant security measures that guard against forgery, including graphics and wording, in both standard and Ultraviolet print, that overlap with the license holder's or cardholder's photograph and a "ghost" image that appears on both the front and back of the license or identification card that shifts from grey to gold as the card is turned. *See* Ind. Bureau of Motor Vehicles, *Indiana Driver's License and ID Card Security and Authenticity*, https://www.in.gov/bmv/resources/files/DL_Security_

and_Authenticity_flyer.pdf (last visited July 10, 2025). Student IDs issued by Indiana colleges do not purport to incorporate any such security measures. And certainly, Plaintiffs make no allegation that student IDs are as secure against forgery as Indiana Driver's Licenses.

SB 10 "ensures that all forms of ID used at the polls are held to the same level of verification. Secretary Morales wants the youth to vote, but they must get an Indiana Drivers License like every other Hoosier and claim Indiana residency." Ind. Sec'y of State, *supra*. It also ensures that only eligible Hoosiers are voting in the State. *Id.* Put another way, SB 10 requires *all* Indiana voters to present a form of identification that meets certain uniform verification and reliability requirements, such as a driver's license. *See supra* 7–8; Ind. Bureau of Motor Vehicles, *supra*.

These important regulatory interests are sufficient to justify the student ID restriction. "There is no question about the legitimacy or importance of the State's interest in counting only the votes of eligible voters. Moreover, the interest in orderly administration and accurate recordkeeping provides a sufficient justification for carefully identifying all voters participating in the election process. While the most effective method of preventing election fraud may well be debatable, the propriety of doing so is perfectly clear." *Crawford*, 553 U.S. at 196.

Identical rules implemented by other states across the country underscore the permissibility of Indiana's decision to exclude student ID from its categories of acceptable voter identification. Idaho, Missouri, Ohio, South Carolina, Tennessee, and Texas have each excluded student IDs from their respective lists of acceptable identification. *See* Idaho Code §§ 34-1113, 34-411 (2024); Mo. Rev. Stat. § 115.427 (2022); Ohio Rev. Code Ann. §§ 3501.01, 3505.18 (West 2023); S.C. Code Ann. § 7-13-710 (2024); Tenn. Code Ann. § 2-7-112 (West 2024); Tex. Elec. Code Ann. § 63.0101 (West 2024). These states have asserted that student IDs are not as secure as other forms of

identification and have excluded them to promote uniform security and protect voter confidence. *See, e.g.*, Idaho Att'y Gen., *Voter ID Law Upheld in Unanimous Idaho Supreme Court Decision* (Aug. 29, 2024), https://www.ag.idaho.gov/newsroom/voter-id-law-upheld-in-unanimous-idaho-supreme-court-decision; David A. Lieb, *Missouri enacts photo voter ID law before November elections*, AP News (June 29, 2022, at 2:45 PM PT), https://apnews.com/article/2022-midterm-elections-voting-missouri-government-and-politics-342663e72a921cb9a5f55657d87a0910.

In light of these legitimate interests, several courts have upheld laws that (among other things) exclude the use of student ID for election purposes. *See BABE VOTE v. McGrane*, 546 P.3d 694 (Idaho 2024); *March for Our Lives Idaho v. McGrane*, 749 F. Supp. 3d 1128, 1142 (D. Idaho 2024); *Ne. Ohio Coal. for the Homeless v. LaRose*, 767 F. Supp. 3d 585 (N.D. Ohio 2024); *Veasey v. Abbott*, 888 F.3d 792 (5th Cir. 2018); *Nashville Student Org. Comm. v. Hargett*, 155 F. Supp. 3d 749 (M.D. Tenn. 2015).

*BABE VOTE* concerned a direct challenge to an Idaho law removing high school student ID cards as acceptable forms of voter identification, on the theory that the restriction violated the state constitution's Equal Protection Clause and right of suffrage of young voters and out-of-state students in Idaho. *See* 546 P.3d at 699–701. The Idaho Supreme Court upheld Idaho's choice of acceptable IDs under the state constitution on the basis that "it is undeniable that the legislature 'has a compelling interest in preserving the integrity of its election process.'" *Id.* at 714 (quoting *Brnovich*, 594 U.S. at 685). Similarly, in *March for Our Lives*, the federal district court ruled that "lack of uniformity in the sophistication of student ID cards" is a legitimate basis for the Idaho law and upheld it, stating that it "promotes the important interests of election security and prevention of voter fraud." *See* 749 F. Supp. 3d at 1143, 1148.

In *Hargett*, Tennessee public college students challenged a state law excluding student ID

cards from acceptable voter identification, alleging that the law violated the Twenty-Sixth Amendment and Equal Protection Clause of the federal Constitution. 155 F. Supp. 3d at 751. There, the court held:

> The allegations in the Complaint involving the burden posed to students by the logistics of having to obtain a state-issued identification other than a student identification card do not—as a matter of law—give rise to an inference that students are burdened in any way greater than the burden to the general population addressed in *Crawford*. Accordingly, the court looks only to whether the state of Tennessee has a valid, neutral justification for imposing this burden and finds that Tennessee's interests in preventing voter fraud, like the interests of the State of Indiana in *Crawford*, are sufficient to justify the Tennessee Voter ID Law.

*Id.* at 754. The court in *Hargett* stated that as long as there was a conceivably rational relationship between the challenged law and the state's interest in countering easily forged student IDs, the law was justified without reference to the "actual motivations of the legislators" or whether there was evidence of student ID fraud. *Id.* at 757.

In sum, state legislatures, state courts, and federal courts alike have recognized that restrictions on student IDs for voter identification are justified by the same legitimate interests that the Supreme Court recognized in *Crawford*, *Brnovich*, and other precedents.

## II.    The Exclusion of Student IDs Does Not Discriminate Against Young Voters.

Plaintiffs argue that the student ID prohibition targets young voters "[b]ecause student voters are overwhelmingly young—for example, in 2020, 70% of student voters from Indiana University Bloomington were under 21, and 92% were under 29 . . . ." Dkt. 1 ¶ 33. Indeed, Plaintiffs go so far as to allege that SB 10 is a "surgical attack" on the voting rights of young voters. Dkt. 1 ¶ 5. Plaintiffs' argument, however, rests on a number of logical fallacies.

As an initial matter, Plaintiffs misconceive how the Seventh Circuit has historically assessed challenges to election regulations brought under the Twenty-Sixth Amendment. Whether a particular regulation "abridges" the fundamental voting rights of young voters turns on the

13

threshold inquiry of whether the regulation imposes "material requirements" on the exercise of the franchise based on the age of voters. *Tully v. Okeson*, 78 F.4th 377, 385–86 (7th Cir. 2023). SB 10 does not create such requirements. Rather, it holds students at public Indiana universities to the same lawful standard as all other Indiana residents.

Moreover, SB 10 does not target voters based on their age for discriminatory treatment. The statistical breakdown on how young people and college students in Indiana are affected by the student ID restriction precludes the notion that it targets young voters. At most, SB 10 affects approximately 57,284 out-of-state public college students aged 18 to 24 out of 672,597 Indiana residents (according to the U.S. Census Bureau) aged 18 to 24:

(1)    As of 2024, there are estimated to be 672,597 residents in Indiana between 18 and 24 years old. STATS Indiana, *InDepth Profile*, https://www.stats.indiana.edu/profiles/profiles.asp (last visited July 9, 2025) (citing data from the U.S. Census Bureau and Indiana Business Research Center).[3]

(2)    Additionally, 249,929 students are enrolled in Indiana *public* colleges (the universe affected by SB 10).[4] Ind. Comm'n for Higher Educ., *Data Dashboards and Analysis: Enrollment & Degree Information, Fall Census Enrollment Summary (October 2024)*, https://www.in.gov/che/reports-and-

---

[3] A court may take judicial notice of data that are a part of the public record or published by government sources, including information published on government websites. *See Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.*, 298 F.3d 600, 607 (7th Cir. 2002) (taking judicial notice of information from official website of the FDIC); *Denius v. Dunlap*, 330 F.3d 919, 926–27 (7th Cir. 2003) (medical records of military personnel from the National Personnel Records Center, Military Personnel Records' website are appropriate for judicial notice because they are not subject to reasonable dispute); *REM Props. v. ExxonMobil Oil Corp.*, No. 22 C 5108, 2023 WL 5152665, at *5 (N.D. Ill. Aug. 10, 2023) ("A fact is judicially noticeable when it is not subject to reasonable dispute . . . Documents that are part of the public record and reports by administrative bodies often fit this bill."); *see also* Fed. R. Evid. 201(b).

[4] This number includes 190,861 students enrolled in four-year and above programs, as well as 59,068 students enrolled in two-year programs. Tableau Pub., *Public Enrollment and Degree Facts*, https://public.tableau.com/app/profile/che.staff/viz/FB_11/Story1 (last visited July 14, 2025).

analyses/#Enrollment___Degree_Information (last visited July 14, 2023). That means that there are, at least, 422,668 Indiana residents aged 18 to 24 who are unaffected by SB 10, either because they do not attend college or because they attend private institutions.

(3)     Of the 249,929 students enrolled in public colleges, 168,941 of them are enrolled as in-state students. Tableau Pub., *Public Enrollment and Degree Facts*, https://public.tableau.com/app/profile/che.staff/viz/FB_11/Story1 (last visited July 14, 2025). These individuals have been able to obtain a driver's license or alternative ID from the BMV for several years, since before age 16, *see* Ind. Code § 9-24-3-2.5, and are, therefore, as a practical matter, unaffected by the burdens posited in Plaintiffs' Complaint. *See* Dkt. 1 ¶¶ 45–52.

(4)     Thus, only 80,988 individuals are out-of-state students attending public colleges who could conceivably be affected by the law as alleged in the Complaint.

(5)     Of these 80,988 out-of-state students, only approximately **57,284** of them are aged 18 to 24. *See* Tableau Pub., *supra*. That is, there is a *maximum* universe of 57,284 individuals of 672,597 Hoosiers aged 18 to 24 who could possibly be impacted by SB 10.

Within this group, at least some number of them do not claim Indiana residency for voting purposes, either because they are students who vote in another state or because they are international students on foreign visas. *See, e.g.*, Ind. Univ., *Enrollment Trends: Attribute Selection – Ethnicity*, https://tableau.bi.iu.edu/t/prd/views/iuia_est_census_enrollment_public/EnrollmentTrends?%3Aembed=y&%3Aiid=1&%3AisGuestRedirectFromVizportal=y (last visited July 10, 2025) (stating that Indiana University currently has 6,062 international students). Thus, an even

smaller number of young voters—that is, the sub-portion of these students who *do* claim Indiana residency—will be required to fulfill the same voter identification requirements as those approximately 422,668 Indiana residents aged 18 to 24 who do not attend a public Indiana college and the approximately 168,941 in-state students who attend a public college but have had many years—since before age 16—to obtain a BMV license or identification card. Such a requirement is hardly a "surgical attack," Dkt. 1 ¶ 5, on "young voters" based on their age.

Because the effects of SB 10, as alleged in the Complaint, *see* Dkt. 1 ¶ 56, would apply if at all to out-of-state students like Plaintiff Mr. Montagne, it can hardly be argued that such effects were "targeted" at voters based on their age. Over 600,000 Indiana residents aged 18 to 24 either do not attend college, attend a private college, or matriculated from Indiana high schools and had access to BMV identifications since before the age of 16, and vote using a BMV-issued ID. *See supra*. SB 10 merely requires those self-selecting out-of-state college students who desire to become Indiana residents to assume the same responsibilities—approved by the Supreme Court in *Crawford*—as over four million Indiana residents in all age groups. And out-of-state students are not a suspect class. It is well-established that states may apply evenhanded laws that allegedly "burden" non-suspect classes so long as they have a legitimate purpose and do not intentionally harm a suspect class or infringe fundamental rights. *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 17, 55 (1973); *Tully*, 78 F.4th at 383 ("However, the Court did not have to apply '[s]uch an exacting approach' because the absentee ballot provisions had not been drawn on the basis of a suspect category, nor did they 'ha[ve] an impact on appellants' ability to exercise the fundamental right to vote.'" (citing *McDonald*, 394 U.S. at 807)); *Hargett*, 155 F. Supp. 3d at 755 ("As the plaintiffs concede, if the Tennessee Voter ID Law is discriminatory on the basis of age, it is still subject only to a rational basis standard of review because age is not a suspect classification (nor

is the status of being a student)."). And because Plaintiffs have failed to demonstrate that SB 10 does not meet this standard, their claims of age discrimination in violation of the Twenty-Sixth Amendment fail as a matter of law.

## CONCLUSION

Indiana's decision to exclude student IDs from its voter ID law is consistent with its constitutional authority to regulate elections. The burdens it imposes are modest and neutral, and its justifications are legitimate and well-supported by precedent. Therefore, Plaintiffs' claims fail as a matter of law, and the State Defendants' Motion to Dismiss should be granted.

DATED: July 14, 2025                    Respectfully Submitted,

                                        */s/Lee E. Goodman*
                                        Lee E. Goodman*
                                        D.C. Bar No. 435493
                                        Domenic P. Aulisi*
                                        Virginia Bar No. 101045
                                        DHILLON LAW GROUP INC.
                                        2121 Eisenhower Avenue, Suite 608
                                        Alexandria, VA 22314
                                        (415) 433-1700

                                            * *Pro Hac Vice* pending

                                        Counsel for *Amicus Curiae*
                                        The Republican National Committee

## CERTIFICATE OF COMPLIANCE

This brief complies with Indiana Local Civil Rule 7.1(e)(1) because it contains fewer than

30 pages, excluding the table of contents, table of authorities, appendices, and certificate of service.


By:  */s/ Lee E. Goodman*
　　　Lee E. Goodman

18

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2025, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.


By:  */s/ Lee E. Goodman*
      Lee E. Goodman